# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**NICHOLAS COMMUNITY ACTION PARTNERSHIP, INC.,**
**Employer Below, Petitioner**

**FILED**
**September 5, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-133**          (JCN: 2020019119)

**MAGGIE JARRETT,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Nicholas Community Action Partnership, Inc. ("NCAP") appeals the March 6, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Maggie Jarrett filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order granting Ms. Jarrett a 7% permanent partial disability ("PPD") award and instead granting her a 17% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Jarrett, a CNA/direct care worker employed by NCAP, sustained a work-related injury on February 14, 2020, when she tried to catch a falling patient. The claim was initially held compensable for "injury to shoulders and lower back." Relevant to the issue of preexisting medical conditions, subsequent medical records indicated that Ms. Jarrett "had a known history of lumbago with sciatica and is seen at the pain clinic and by neurosurgery." Ms. Jarrett was instructed to participate in physical therapy and continue with the pain medications she was prescribed by the pain clinic.

On April 18, 2020, Ms. Jarrett underwent an MRI of the left shoulder, which revealed supraspinatus and infraspinatus tendinitis or tendinopathy with mild to moderate impingement related to osteophytes at the level of the AC joint and distal acromion. Mild glenohumeral osteoarthritis and minimal fluid in the subacromial-subdeltoid bursa were

---

[1] Petitioner is represented by Charity K. Lawrence, Esq. Respondent is represented by John H. Shumate, Jr., Esq.

1

also noted. There was no rotator cuff tear, labral tear, or bone fracture. The MRI of the right shoulder revealed supraspinatus and infraspinatus tendinitis or tendinopathy with mild impingement related to osteophytes at the level of the AC joint. There was no rotator cuff tear, labral tear, or bone fracture, though there was minimal fluid in the subacromial-subdeltoid bursa. Lastly, an MRI of the cervical spine revealed a C4-C5 central disc herniation with diffuse disc bulging and a relatively smaller localized central disc herniation at C6.

Subsequently, Ms. Jarrett's physical therapist recommended an orthopedic evaluation because her bilateral shoulder pain was not improving with physical therapy, and Ms. Jarrett reported that she was not able to raise her arms above her head and needed assistance with activities of daily life. On May 13, 2020, the claim administrator added the following secondary conditions to Ms. Jarrett's claim: right shoulder strain; left shoulder strain; strain muscle fascia and tendon, low back; and calcified tendonitis of the left shoulder.

Ms. Jarrett continued to suffer from neck and shoulder pain and was treated by various physicians. On January 27, 2021, Richard E. Topping, M.D., performed an arthroscopic acromioplasty and arthroscopic distal clavicle resection of the left shoulder on Ms. Jarrett and diagnosed left shoulder sprain/strain with subacromial bursitis.

On May 10, 2021, Joseph E. Grady, M.D., performed an independent medical evaluation ("IME") of Ms. Jarrett. Dr. Grady opined that Ms. Jarrett had reached maximum medical improvement ("MMI") for the compensable conditions in the claim. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Grady assessed 0% whole person impairment for the lumbar spine. Regarding the right shoulder, Dr. Grady assessed 1% whole person impairment. As to the left shoulder, Dr. Grady assessed 4% upper extremity impairment ("UEI") for loss of range of motion and 10% UEI for the distal clavicle resection, which combined to 14% UEI. Using Table 3 on page 3/20 of the *Guides*, Dr. Grady converted the 14% UEI to 8% whole person impairment. Dr. Grady then apportioned 2% whole person impairment to preexisting degenerative changes in the left shoulder, leaving a 6% whole person impairment for the shoulder. In total, Dr. Grady recommended 7% whole person impairment for the compensable conditions. On May 24, 2021, the claim administrator granted Ms. Jarrett a 7% PPD award based on Dr. Grady's report.

Ms. Jarrett underwent a second IME, which was performed by Michael Kominsky, D.C., on June 23, 2022. Using the *Guides*, Dr. Kominsky assessed 7% whole person impairment for the lumbar spine, and after applying West Virginia Code of State Rules § 85-20 Table E, apportioned 2% for preexisting degenerative changes, leaving 5% whole person impairment. For the right shoulder, Dr. Kominsky assessed 2% whole person impairment. Regarding the left shoulder, Dr. Kominsky found that Ms. Jarrett had 8% UEI due to loss of range of motion and 10% UEI for her distal clavicular resection. This totaled

18% UEI, which Dr. Kominsky converted to 10% whole person impairment using Table 3 on page 3/20 of the *Guides*. Combining 10% whole person impairment for the left shoulder, 5% whole person impairment for the lumbar spine, and 2% whole person impairment for the right shoulder, Dr. Kominsky concluded that Ms. Jarrett had a 17% whole person impairment related to the compensable injury.

Ms. Jarrett underwent a final IME, which was performed by David Soulsby, M.D., in September of 2022. Using the *Guides*, Dr. Soulsby assessed 4% impairment for Ms. Jarrett's cervical spine, which was adjusted to 5% per West Virginia Code of State Rules § 85-20. Dr. Soulsby then apportioned one half of the impairment to Ms. Jarret's bulging disc, as shown on the prior MRI, and rounded to 3% the impairment attributed to the work-related injury. For the shoulders, Dr. Soulsby assessed 6% whole person impairment each for the right and left shoulders. Dr. Soulsby found no need to assign impairment to the clavicular resection. However, due to Ms. Jarrett's preexisting conditions, Dr. Soulsby apportioned 4% impairment for each shoulder, leaving 2% impairment for each shoulder. Lastly, Dr. Soulsby assessed 8% whole person impairment for the lumbar spine but apportioned the entire 8% to preexisting conditions. Combining the impairment ratings for the cervical spine (3%), lumbar spine (0%), right shoulder (2%), and left shoulder (2%), Dr. Soulsby recommended a total of 7% whole person impairment.

By order dated March 6, 2023, the Board reversed the claim administrator's order granting Ms. Jarrett a 7% PPD award and instead granted her an additional 10% award, for a total award of 17% PPD in accordance with Dr. Kominsky's recommendation. Citing to the Supreme Court of West Virginia's holding in Syllabus Point 5 of *Moore v. Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), the Board found that "apportionment of impairment for [Ms. Jarrett's] lumbar spine is appropriate" but that apportionment for her shoulders was not appropriate. The Board found that, while NCAP argued that Ms. Jarrett was entitled to a 7% PPD award in accordance with the reports of Drs. Grady and Soulsby, the medical record did not support their recommendations, especially with regard to apportionment for preexisting shoulder conditions. Specifically, the Board noted that Dr. Grady's apportionment of 4% impairment for each shoulder due to preexisting conditions was not supported by the record as there was no evidence that Ms. Jarrett's shoulders were symptomatic prior to the injury. Additionally, the Board noted that Dr. Soulsby improperly considered Ms. Jarrett's cervical spine, which was not compensable in the claim. As such, the Board found that neither the rating by Dr. Grady nor the rating by Dr. Soulsby were reliable, leaving only Dr. Kominsky's rating. The Board noted NCAP's argument that Dr. Kominsky improperly included an impairment rating for the left resection arthroplasty of the distal clavicle but found that Dr. Grady also rated this procedure. Ultimately, the Board found that Dr. Kominsky's impairment rating was "relevant, credible, material and reliable" and granted Ms. Jarrett a total award of 17% PPD in accordance with his recommendation. NCAP now appeals and filed a motion to stay payment of the PPD award. By order dated April 20, 2023, this Court granted the stay in part.

3

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, NCAP argues that the Board erred in reversing the claim administrator's order and awarding Ms. Jarrett a 17% PPD award in accordance with Dr. Kominsky's recommendation. Specifically, NCAP argues the Board improperly applied *Moore* by apportioning for preexisting conditions, and, rather, should have applied the standard set forth in West Virginia Code § 23-4-9b (2003). NCAP argues the law is clear that preexisting conditions must be apportioned in impairment ratings. Both Dr. Grady and Dr. Soulsby agreed that Ms. Jarrett had a 7% whole person impairment, which took into account her extensive preexisting conditions, but Dr. Kominsky completely failed to apportion for Ms. Jarrett's preexisting conditions. NCAP further argues that Dr. Kominsky also erred in rating for resection arthroplasty of the distal clavicle. Given Dr. Kominsky's failures, NCAP concludes that the Board erred in relying on his recommendation and granting Ms. Jarrett a higher PPD award.

While we agree with NCAP that the Board should have applied the standard set forth in West Virginia Code § 23-4-9b, and in *Duff*, rather than *Moore*, we conclude that it was harmless error. *See Jennings v. Smith*, 165 W.Va. 791, 792, 272 S.E.2d 229, 230 (1980) (per curiam) ("Upon careful consideration of the record, briefs, and oral argument presented on this appeal we affirm, concluding that any error or defect in the proceedings below was . . . harmless.").

As we noted in *Duff*, West Virginia Code § 23-4-9b (2003) requires, in part, that:

4

> Where an employee has a *definitely ascertainable impairment* resulting from an occupational or a nonoccupational injury, disease, or any other cause, whether or not disabling, and the employee thereafter receives an injury in the course of and resulting from his or her employment, unless the subsequent injury results in total permanent disability within the meaning of section one [§ 23-3-1], article three of this chapter, *the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation* allowed by reason of the subsequent injury.

247 W. Va. at 556, 882 S.E.2d 922. In *Duff*, we explained that "'definitely ascertainable' and 'definitely ascertained' refer to the existence of a preexisting condition, and not to the precise degree of impairment to be apportioned." *Id.* Accordingly, after determining whether a "definitely ascertainable impairment" exists, the Board must then determine the degree of impairment to be apportioned. West Virginia Code § 23-4-9b provides that "[t]he degree of the preexisting impairment may be established at any time by competent medical or other evidence."

While the Board did not explicitly address West Virginia Code § 23-4-9b or our holdings in *Duff*, it did make sufficient findings such that we are convinced that the same result would have been reached had it applied the appropriate statute. Specifically, the Board found that, considering her history of prior symptoms and treatment, apportionment for Ms. Jarrett's spine was appropriate, but that apportionment for her shoulders was not warranted given the evidence before it. The Board acknowledged that Ms. Jarrett had preexisting conditions in both her shoulders, but ultimately found that apportionment for her shoulders was not required as there was no evidence that she was symptomatic prior to the compensable injury. As noted in *Duff*, the Supreme Court of Appeals of West Virginia has previously recognized that imaging studies (which demonstrated preexisting or degenerative conditions) alone were insufficient to warrant apportionment. 247 W. Va. at 558, 882 S.E.2d at 924. However, apportionment has been upheld "where preexisting conditions were symptomatic prior to the compensable injury." *Id.* Given these considerations by the Board, we cannot find that it was clearly wrong in determining that apportionment was necessary for Ms. Jarrett's spine but not her shoulders (despite its citation to *Moore* instead of *Duff*).

As such, the Board was not clearly wrong in disregarding the recommendations of Drs. Soulsby and Grady, both of whom apportioned for Ms. Jarrett's preexisting, but asymptomatic, shoulder condition. Also, Dr. Soulsby improperly considered Ms. Jarrett's non-compensable cervical spine in providing an impairment rating and, therefore, his recommendation was clearly flawed and could not be adopted. The Board, having found problems with the reports of both Drs. Grady and Soulsby, was left with the report of Dr. Kominsky. In reviewing Dr. Kominsky's report, the Board noted that he properly apportioned for Ms. Jarrett's preexisting spine condition while appropriately refraining

5

from apportioning for Ms. Jarrett's preexisting, asymptomatic shoulder condition. While NCAP takes issue with Dr. Kominsky providing an impairment rating for the resection arthroplasty of the distal clavicle, the Board found that both he and Dr. Grady determined that the rating was necessary. Accordingly, we find that the Board would have disregarded the reports of Drs. Soulsby and Grady under these same reasons even had it cited to West Virginia Code § 23-4-9b and *Duff*.

Consequently, because we find that the Board would have reached the same conclusion had it applied West Virginia Code § 23-4-9b and *Duff* as opposed to *Moore*, we find that a harmless error occurred. Accordingly, we affirm the Board's March 6, 2023, order and, further, vacate the stay granted by this Court on April 20, 2023.

Affirmed.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

6